DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone:  212.259.8000
Facsimile:  212.259.6333
Peter A. Ivanick, Esq.
Martin J. Bienenstock, Esq.
Lawrence M. Hill, Esq.

*Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
*In re*                                    :    **11 Civ. 270 (PGG) (JLC)**
                                           :
**AMBAC FINANCIAL GROUP, INC.,**           :    **Chapter 11 Case No.**
                                           :    **10-15973 (SCC)**
          **Debtor.**                :
-------------------------------------------------------------x

**AMBAC FINANCIAL GROUP, INC.,**     x    **Adversary Proceeding No.**
          **Plaintiff,**         :
    - against -                 :    **10-04210 (SCC)**
                                     :
**UNITED STATES OF AMERICA,**        :
                                     :
          **Defendant**      :
                                     :
    **and**                       :
                                     :
**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,**               :
                                     :
          **Intervernor.**   :
-------------------------------------------------------------x

**DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO UNITED STATES'
MOTION TO WITHDRAW THE REFERENCE PURSUANT TO
28 U.S.C. § 157(d)**

## **Table of Contents**

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................2

    A.    The Debtor's Bankruptcy........................................................................2

    B.    The Adversary Proceeding......................................................................4

ARGUMENT ..............................................................................................................6

I.    INTRODUCTION ..............................................................................................6

    A.    This Adversary Proceeding Is a Core Proceeding ......................................6

    B.    The Necessity for the Debtor's Prompt Reorganization
           Weighs in Favor of Keeping the Proceeding in Bankruptcy
           Court ......................................................................................................7

II.    THE GOVERNMENT'S ARGUMENTS IN SUPORT OF
     WITHDRAWAL OF THE REFERENCE ARE WITHOUT
     MERIT ...............................................................................................................9

    A.    There Is No Basis for Mandatory Withdrawal of the
           Reference ..............................................................................................10

           1.    Standard for Mandatory Withdrawal .............................................10

           2.    The Government's Arguments in Support of Mandatory
                  Withdrawal Are Without Merit......................................................13

                  a.    Withdrawal of the Reference Is Not
                        Mandatory with Respect to the Debtor's
                        Request for a Determination of Its Tax
                        Liability...........................................................13

                  b.    Withdrawal of Reference Is Not Mandatory
                        with Respect to the Debtor's Request for a
                        Preliminary Injunction .....................................16

    B.    There Is No Basis for Discretionary Withdrawal of the
           Reference ..............................................................................................20

CONCLUSION..........................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Am. Bicycle Ass'n v. United States (In re Am. Bicycle Ass'n)*,
   895 F.2d 1277 (9th Cir. 1990) ................................................................................19

*Am. Tel. & Tel. Co. v. Chateaugay Corp.*,
   88 B.R. 581 (S.D.N.Y. 1988)................................................................................10, 11, 15

*California v. Enron Corp. (In re Enron Corp.)*,
   05 Civ. 4079 (BGD), 2005 U.S. Dist. LEXIS 9548 (S.D.N.Y. May 17, 2005)......................21

*Carter Day Indus., Inc. v. United States Envtl. Prot. Agency (In re Combustion
   Equip. Assocs., Inc.)*,
   67 B.R. 709 (S.D.N.Y. 1986)................................................................................12

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995)................................................................................5, 19

*Central Va. Community College v. Katz*,
   546 U.S. 356 (2006)................................................................................17, 18, 19

*Century Hotels v. United States*,
   952 F.2d 107 (5th Cir. 1992) ................................................................................15

*City of New York v. Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991)................................................................................15

*Clavizzao v. United States*,
   706 F. Supp. 2d. 342 (S.D.N.Y. 2009)................................................................................17

*Dunmore v. United States*,
   358 F.3d 1107 (9th Cir. 2004) ................................................................................6

*Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.)*,
   388 B.R. 131 (S.D.N.Y. 2008)................................................................................15

*Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.)*,
   04 Civ. 509 (MBM), 2004 U.S. Dist. LEXIS 19131 (S.D.N.Y. Sept. 22, 2004) ..................21

*In re Adelphia Commc'ns Corp.*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007), *appeal dismissed*, 371 B.R. 660
   (S.D.N.Y. 2007), *aff'd*, 544 F.3d 420 (2d Cir. 2008) ................................................................8

*In re Baldwin-United Corp.*,
   55 B.R. 885 (S.D. Ohio 1985) ................................................................................8

*In re Bankr. Court's Use of a Standardized Form of Chapter 13 Confirmation Order that Enjoins Internal Revenue Serv. to Redirect Tax Refunds to Chapter 13 Trustees*,
423 B.R. 294 (E.D. Mich. 2010) ............................................................................20

*In re Best Payphones, Inc.*,
370 B.R. 532 (S.D.N.Y. 2004) ...............................................................................12

*In re Boston Generating, LLC*,
Nos. 10 Civ. 6258 (DLC), 10 Civ. 7208 (DLC), 2010 WL 4288171
(S.D.N.Y. Nov. 1, 2010) ...............................................................................11, 12

*In re DPH Holdings*,
437 B.R. 88 (S.D.N.Y. 2010) .................................................................................19

*In re Enron Corp.*,
No. 01-16034 (AJG), 2006 Bankr. LEXIS 4294 (Bankr. S.D.N.Y. Jan. 17, 2006) ........................................................................................................................9

*In re G-I Holdings, Inc.*,
420 B.R. 216 (D.N.J. 2009) ...............................................................................18, 19

*In re Hall*,
123 B.R. 441 (Bankr. N.D. Ga. 1990) ....................................................................20

*In re Horizon Air*,
156 B.R. 369 (N.D.N.Y. 1993) ...............................................................................16

*In re Johns-Manville Corp.*,
57 B.R. 680 (Bankr. S.D.N.Y. 1986) ...................................................................8, 10

*In re Johns-Manville Corp.*,
63 B.R. 600 (S.D.N.Y. 1986) .................................................................................10

*In re Kenai Corp.*,
136 B.R. 59 (S.D.N.Y. 1992) ..................................................................................22

*In re Lionel LLC*,
No. 04-17324, 2007 Bankr. LEXIS 2652 (Bankr. S.D.N.Y. Aug. 3, 2007) .............9

*In re Oil Co.*,
140 B.R. 30 (E.D.N.Y. 1992) .................................................................................16

*In re Pressimore*,
39 B.R. 240 (N.D.N.Y. 1984) .................................................................................20

*In re Recoton Corp.*,
No. 04 Civ. 2466 (DLC), 2004 WL 1497570 (S.D.N.Y. July 1, 2004) ............11, 12

iii

*In re Texaco Inc.*,
    84 B.R. 911 (S.D.N.Y. 1988)................................................................................11

*In re White Motor Corp.*
    42 B.R. 693 (N.D. Ohio 1984)............................................................................10

*Internal Revenue Serv. v. CM Holdings, Inc. (In re CM Holdings, Inc.)*,
    221 B.R. 715 (D. Del. 1998)...............................................................................16

*Keene Corp. v. Williams Bailey & Wesner, LLP (In re Keene Corp.)*,
    182 B.R. 379 (S.D.N.Y. 1995).............................................................................16

*Laughlin v. Internal Revenue Serv.*,
    912 F.2d 197 (8th Cir. 1990) ..............................................................................19

*Murphy v. Internal Revenue Serv.*,
    493 F.3d 170 (D.C. Cir. 2007)............................................................................17

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982)................................................................................................7

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993)...........................................................................20, 21

*Pension Benefit Guar. Corp. v. LTV Corp.*
    *(In re Chateaugay Corp.)*, 86 B.R. 33 (S.D.N.Y. 1987)..................................10, 11

*Pension Benefit Guar. Corp. v. Pan Am Corp. (In re Pan Am Corp.)*,
    133 B.R. 700 (S.D.N.Y. 1991)............................................................................15

*Presidential Gardens Assocs. v. United States*,
    175 F.3d 132 (2d Cir. 1999)...............................................................................17

*Ranch 1 Metro, Inc. v. State Nat'l Ins. Co. (In re Ranch 1, Inc.)*,
    No. 02 Cir. 4417 (WK), 2002 WL 31175184 (S.D.N.Y. Sept. 27, 2002) ...............21

*Randell v. United States*,
    64 F.3d 101 (2d Cir. 1995).................................................................................17

*Schneider v. Riddick (In re Formica Corp.)*,
    305 B.R. 147 (S.D.N.Y. 2004)............................................................................22

*Shugrue v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.)*,
    922 F.2d 984 (2d Cir. 1990)...............................................................................15

*Shugrue v. Pension Benefit Guar. Corp. (In re Ionosphere Clubs, Inc.)*,
    142 B.R. 645 (S.D.N.Y. 1992), *vacated*, 147 B.R. 855 (S.D.N.Y. 1992) ...............14

*South St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.)*,
   94 F.3d 755 (2d Cir. 1996)......................................................................................21

*U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*,
   145 B.R. 539 (N.D. Tex. 1992)..............................................................................15

*United Illuminating v. Enron Power Mktg., Inc. (In re Enron Corp.)*,
   No. 03 Civ. 5078 (DLC), 2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003) ...........21

*United States v. G-I Holdings, Inc. (In re G-I Holdings)*,
   295 B.R. 222 (D.N.J. 2003) ....................................................................................16

*United States v. Plainwell, Inc.*,
   No. 00-4350 (JWV), 2004 WL 2345717 (D. Del. Oct. 7, 2004) ...........................20

*Upton Printing Co. v. United States*,
   116 B.R. 66 (E.D. La. 1989) ..................................................................................20

*Zond Minn. Const. Co., LLC v. Marathon Elec. Mfg. Corp. (In re Enron Corp.)*,
   04 Civ. 7950 (NRB), 2005 U.S. Dist. LEXIS 2132 (S.D.N.Y. Feb. 14, 2005) .....21

## STATUTES

11 U.S.C. § 105 ..........................................................................................4, 17, 18, 19

11 U.S.C. § 105(a) ...........................................................................................1, 5, 16

11 U.S.C. § 106 ...................................................................................................17, 18, 19

11 U.S.C. § 106(a) ............................................................................................16, 18, 19

11 U.S.C. § 106(a)(1) .............................................................................................17, 18

11 U.S.C. § 106(a)(2) ...................................................................................................17

11 U.S.C. § 106(a)(3) ...................................................................................................17

11 U.S.C. § 502(c) ....................................................................................................7, 8

11 U.S.C. § 502(c)(1) .....................................................................................................8

11 U.S.C. § 505 ...........................................................................1, 6, 7, 17, 18, 19

11 U.S.C. § 505(a) ..........................................................................................................4

11 U.S.C. § 362 ......................................................................................................16, 19

11 U.S.C. § 362(a) .................................................................................1, 4, 5, 16

26 U.S.C. § 7421(a) ...............................................................................................16

28 U.S.C. § 157(b)(1) ..............................................................................................6

28 U.S.C. § 157(b)(2) ............................................................................................21

28 U.S.C. § 157(b)(2)(C) .......................................................................................18

28 U.S.C. § 157(d) ......................................................................................... passim

28 U.S.C. § 1334(e) .................................................................................................7

28 U.S.C. § 1346(a)(1) .............................................................................................7

**OTHER AUTHORITIES**

Bankruptcy Rule 7065 ..................................................................................... passim

Weil, Gotshal & Manges, Reorganizing Failing Businesses: A Comprehensive
     Review and Analysis of Financial Restructuring and Business Reorganization ...................12

Ambac Financial Group, Inc. ("AFG" or the "Debtor") respectfully submits this memorandum of law in opposition to the motion by the United States to withdraw the reference to the United States Bankruptcy Court for the Southern District of New York of this adversary proceeding, pursuant to 28 U.S.C. § 157(d).

## PRELIMINARY STATEMENT

In this adversary proceeding, the Debtor is seeking a declaration, pursuant to Bankruptcy Code section 505, that the Debtor and the members of its consolidated group have no tax liability for tax years 2003 through 2008 and that they are entitled to retain Tax Refunds (defined below) paid by the Internal Revenue Service ("IRS"). The Debtor also is seeking a temporary restraining order and a preliminary injunction, pursuant to bankruptcy code sections 105(a) and 362(a) and Bankruptcy Rule 7065, ordering the IRS to provide five business days' prior written notice (filed with the Bankruptcy Court and served by electronic mail on Debtor's counsel) before taking any Enforcement Action (defined below) contrary to the State Court Injunction (defined below), whether or not such injunction remains in effect.

The government contends that the reference to the bankruptcy court of this adversary proceeding should be withdrawn because its resolution will require the court to engage in substantial interpretation of non-bankruptcy federal law. The government also argues that cause exists for permissive withdrawal. The government is wrong. Resolution of this proceeding does not require consideration of both bankruptcy and non-bankruptcy federal law such that mandatory withdrawal would be required. Further, considerations of judicial economy weigh in favor of keeping the proceeding in bankruptcy court at least until the matter is trial ready, and thus cause does not exist to support permissive withdrawal. Withdrawal of the reference is inappropriate.

1

## STATEMENT OF FACTS

### A.    The Debtor's Bankruptcy

The Debtor is a holding company dependent upon dividends from its principal

wholly owned operating subsidiary, Ambac Assurance Corporation ("AAC"), to pay its

indebtedness and operating expenses.  Complaint for Injunctive Relief and Declaratory

Judgment Determining Amount of Tax Liability ("Compl.") ¶ 11.  AAC is a Wisconsin-

domiciled financial guaranty insurance company subject to the insurance laws and

regulations of the State of Wisconsin and regulated by the Office of the Commissioner of

Insurance of the State of Wisconsin ("OCI").  *Id.*

Ambac Credit Products LLC ("ACP"), a wholly owned Delaware limited liability

company of AAC, entered into credit default swaps ("CDSs") as the credit protection

seller on municipal and corporate obligations and asset-backed securities.  *Id.* ¶ 16.  ACP

wrote CDS contracts from 1999 through 2004 (the "Pre-2005 CDS Contracts") that

differed in some material respects from the CDS contracts ACP wrote from 2005 through

2008 (the "Post-2004 CDS Contracts").  *Id.* ¶ 18.  In April 2008, the Debtor filed an

application to change its accounting method with respect to the timing of the income

received from the Post-2004 CDS Contracts.  *Id.* ¶ 23.  This application was later

supplemented in 2008 by letter to the IRS clarifying that no accounting method had been

adopted with respect to losses under the Post-2004 CDS Contracts and that the

impairment method was being adopted with respect to those losses. *Id.*

Starting with the Debtor's 2007 consolidated federal income tax return, AAC

accrued losses with respect to the Post-2004 CDS Contracts and treated as an ordinary

loss the amount it estimated it would be required to pay in respect of the CDSs.  *Id.* ¶ 24.

The Debtor reported approximately a $33 million taxable loss for 2007 and a $3.2 billion

taxable loss for 2008.  AFG filed three separate claims for tentative carryback

adjustments on Form 1139 (Corporate Application for Tentative Refund) in 2008 and

2009 as a result of the carryback to prior taxable years of the net operating losses

reflected on its 2007 and 2008 consolidated federal income tax returns.  *Id.* ¶ 27.  Based

upon these claims, the IRS refunded to AFG approximately $700 million total in tax

refunds (the "Tax Refunds"), which AFG distributed to AAC pursuant to a tax sharing

agreement.  *Id.*

   In March 2010, OCI approved the establishment of a segregated account of AAC

(the "Segregated Account") and commenced rehabilitation proceedings with respect to

the Segregated Account.

   On October 28, 2010, the IRS requested information from the Debtor about

whether AAC had received authorization for the method of accounting used for its Post-

2004 CDS Contracts.  *Id.* ¶ 30.  Absent such authorization, the information document

request requested detailed information on the legal authority AAC relied on in

(a) accounting for its CDSs and (b) claiming refunds for its tax years 2003 through 2007.

*Id.*  The IRS also indicated to AFG that it was questioning the propriety of the Tax

Refunds and was investigating whether to seek to recoup the Tax Refunds.  *Id.*

   On November 8, 2010, OCI was granted an injunction (the "State Court

Injunction") to prevent the IRS from asserting liens against or levying upon the assets of

AAC and its subsidiaries and to prevent AFG or AFG-related parties from pursuing

specific claims against the Segregated Account, the general account, or AAC's
subsidiaries (collectively, "Enforcement Actions").[1]  *Id.*

On November 8, 2010, AFG commenced a voluntary case under Chapter 11 of
the Bankruptcy Code.  *Id.* ¶ 4.

### B.    The Adversary Proceeding

On November 9, 2010, AFG filed an adversary proceeding in the United States
Bankruptcy Court for the Southern District of New York, seeking a declaration pursuant
to Bankruptcy Code section 505(a) that AFG has no tax liability for the years 2003
through 2008 and is entitled to retain the full amount of the Tax Refunds as well as a
temporary restraining order and preliminary injunction, pursuant to Bankruptcy Code
sections 105 and 362(a) and Bankruptcy Rule 7065, requiring the IRS to provide five
business days' prior written notice (filed with the bankruptcy court and
contemporaneously served by electronic mail on Debtor's counsel) before taking any
Enforcement Action contrary to the State Court Injunction, whether or not such
injunction remains in effect.  *Id.* ¶ 2.  On the same day, AFG filed with the court a motion
for a temporary restraining order and preliminary injunction, pursuant to Bankruptcy
Code sections 105 and 362(a) and Bankruptcy Rule 7065, ordering the IRS to provide
five business days' prior written notice (filed with the bankruptcy court and
contemporaneously served by electronic mail on Debtor's counsel) before taking any
Enforcement Action contrary to the State Court Injunction, whether or not such
injunction remains in effect.  *See* Motion for Temporary Restraining Order and

---

[1] The definition of Enforcement Actions is used for ease of reference only and is not intended,
and shall not be deemed, to limit the scope of the State Court Injunction, the actual terms of
which control.

4

Preliminary Injunction Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules) (the "PI Motion").  The purpose of the PI Motion was to protect the bankruptcy court's jurisdiction from being frustrated by an ex parte seizure by the IRS that would destroy the Debtor's reorganization.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 309-10 (1995) (holding that the question of whether the bankruptcy court could prevent a non-debtor third party from immediately executing on a bond against a debtor's surety was at least a question "related to" the debtor's bankruptcy and thus within the bankruptcy court's jurisdiction; attempts by judgment creditors to reach sureties could have a direct and substantial adverse affect on the debtor's ability to undergo a successful reorganization).

During a hearing on November 9, 2010 regarding the adversary proceeding, the Debtor and the IRS stipulated and agreed that the IRS shall provide at least five business days' prior written notice before taking any Enforcement Action contrary to the State Court Injunction until the PI Motion was decided.

Although AAC has been unable to pay dividends to the Debtor for several years, absent special approval from OCI, which is not expected, AAC is nevertheless a valuable asset.  *Id.* ¶ 15.   The future value of AAC, and thus the value of the Debtor's estate, depends on AAC's success in certain endeavors.  *Id.*

The Debtor, AAC, and other of the Debtor's non-debtor affiliates are consolidated group members for federal income tax purposes and are severally liable for the entire consolidated tax liability as computed on their consolidated federal income tax return.  *Id.* ¶ 35; *see* Treas. Reg. § 1.1502-6(a).  Should the IRS seize assets of AAC or the other members of the Debtor's tax sharing group for a tax ultimately adjudicated not to be

owing, the effect would destroy or seriously jeopardize the Debtor's ability to reorganize. *Id.* ¶ 36.  If the IRS takes Enforcement Actions against AAC, there is a significant risk OCI would quickly thereafter commence a rehabilitation of AAC's general account, which would result in debilitating losses of value of AAC, impairing AFG's ability to reorganize AAC's business platforms.  *Id.*   In addition, any IRS action taken against the other valuable non-debtor subsidiaries of AFG included within its consolidated tax group aimed at recapturing the Tax Refunds could have negative effects on AFG.  *Id.* ¶ 39.

## ARGUMENT

## I.    INTRODUCTION

### A.    This Adversary Proceeding Is a Core Proceeding

The Debtor's request, as set forth in its Complaint, for a determination that the Debtor and the members of the consolidated group have no tax liability for tax years 2003 through 2008 and are entitled to retain the full amount of the Tax Refunds clearly makes the adversary proceeding a "core" proceeding.  28 U.S.C. § 157(b)(1) provides that core proceedings include proceedings arising under title 11.  The Debtor's request for declaratory relief was made pursuant to 11 U.S.C. § 505, which provides that the court may determine "any tax."  Section 505 falls within title 11 and thus this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

The government attempts to argue that the adversary proceeding is a non-core proceeding, erroneously characterizing it as one brought by the Debtor "for the purpose of obtaining a tax refund."[2]  Memorandum in Support of United States' Motion to

---

[2]  The government cites the Ninth Circuit's opinion in *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004), in which the court determined that "tax refund claims do not depend on Title 11 for their existence, but instead depend on 28 U.S.C. § 1346(a)(1), and the [debtor] could have brought them in the district court."

Withdraw the Reference Pursuant to 11 U.S.C. § 157(d) ("<u>Withdrawal Memorandum</u>") at 29.  Such characterization is mistaken.  The Debtor is seeking a declaration, pursuant to 11 U.S.C. § 505, that the Debtor and the members of its consolidated group have no tax liability.  To the extent the government is arguing that this is a non-core proceeding because the government has not filed a proof of claim, the government is entirely ignoring the fact that the proceeding is core by virtue of the fact that the Debtor has brought this proceeding under title 11.  Moreover, the government also errs to the extent it attempts to analogize this case to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  *Northern Pipeline* involved a debtor's contract claim against a third party and thus involved a non-core proceeding.  The contract claim was not brought pursuant to any provision of title 11.  The Complaint, however, is brought pursuant to Bankruptcy Code section 505.  Additionally, this case, in contrast, involves a dispute over amounts paid to and controlled by the Debtor that clearly are property of the estate subject to the court's exclusive jurisdiction under 28 U.S.C. § 1334(e).  The Debtor is not suing the government to obtain a refund of taxes erroneously paid.

    **B.**    **The Necessity for the Debtor's Prompt Reorganization Weighs in Favor of Keeping the Proceeding in Bankruptcy Court**

Included within the Bankruptcy Code is section 502(c), which is a special provision that has no corollary in the Federal Rules of Civil Procedure and thus is unavailable in other litigation in federal courts.  11 U.S.C. § 502(c).  The provision provides, with certain inapplicable exceptions, that bankruptcy courts may determine the amount of unliquidated claims against the estate.  Section 502(c) provides that there shall be estimated for purposes of allowance under section 502 "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the

7

administration of the case." 11 U.S.C. § 502(c)(1). The provision is designed to produce prompt resolutions of claims so debtors can reorganize without inordinate expenditures of time and money on claims litigation. The availability of such an option in the bankruptcy court is itself a factor that strongly weighs in favor of denying the motion for reference withdrawal and having this proceeding remain in bankruptcy court where estimation is a familiar technique.

The Debtor's reorganization is jeopardized by the amount of time and funds that may be necessary for it to proceed forward with litigation and the related discovery, motion practice, trial, and appeals that such litigation would involve. Section 502(c) allows the bankruptcy court to estimate claims with whatever procedures provide due process. Mandating the estimation of all contingent or unliquidated claims that cannot be liquidated without undue delay has the effect of bringing all claims of whatever nature into the bankruptcy estate and giving all claimants the same opportunity to share in the distribution from the estate. *In re Johns-Manville Corp.*, 57 B.R. 680, 687 (Bankr. S.D.N.Y. 1986); *In re Baldwin-United Corp.*, 55 B.R. 885, 897-98 (S.D. Ohio 1985). Under section 502, the bankruptcy court is able to allow each party to argue its case on brief and in a hearing and may use "whatever method is best suited to the particular contingencies at issue" in estimating claims, so long as the substantive and procedural requirements of due process are met. *See In re Baldwin-United Corp.*, 55 B.R. at 899 (quoting *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982)).

Bankruptcy courts are experts at conducting estimation proceedings and routinely do so. *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y. 2007), *aff'd*, 544 F.3d 420 (2d Cir. 2008); *In*

*re Lionel LLC*, No. 04-17324, 2007 Bankr. LEXIS 2652 (Bankr. S.D.N.Y. Aug. 3, 2007);

*In re Enron Corp.*, No. 01-16034 (AJG), 2006 Bankr. LEXIS 4294 (Bankr. S.D.N.Y. Jan.

17, 2006).  While the district court could also preside over an estimation, the district court

is in a better position to allow the bankruptcy court to do so, subject to appellate review

by the district court or Second Circuit.  Depending on the discovery schedule and timing

that this adversary proceeding takes on, estimation may be required.

 The ability of the bankruptcy court alone to conduct estimation hearings means

the district court is better off, at a minimum, leaving the case in the bankruptcy court at

least until the point where the proceeding is trial-ready.  This would enable the

bankruptcy court to conduct an estimation if necessary or appropriate and propose

findings of fact and conclusions of law to the district court.

## II. THE GOVERNMENT'S ARGUMENTS IN SUPORT OF WITHDRAWAL OF THE REFERENCE ARE WITHOUT MERIT

 28 U.S.C. § 157(d) provides for both mandatory and discretionary withdrawal of

the reference:

> The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of *both* title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).  The government fails to show that either

mandatory or discretionary withdrawal is appropriate with respect to this adversary

proceeding, and thus the motion to withdraw should be denied.

### A.       There Is No Basis for Mandatory Withdrawal of the Reference

#### 1.       Standard for Mandatory Withdrawal

28 U.S.C. § 157(d) requires the district court to withdraw a proceeding referred to the bankruptcy court if "resolution of the proceeding requires consideration of *both* title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d) (emphasis added).  Mandatory withdrawal pursuant to section 157(d) is not required in this case.

Courts initially interpreted 28 U.S.C. § 157(d) to require that a proceeding involve "substantial and material" consideration of non-title 11 laws before reference withdrawal would be mandatory.  *See, e.g.*, *In re White Motor Corp.*, 42 B.R. 693 (N.D. Ohio 1984). Many courts, however, have questioned the meaning of the provision and have recognized that a literal application of the statute "could open a broad 'escape hatch through which most bankruptcy matters [could] be removed to a district court.'"  *Pension Benefit Guar. Corp. v. LTV Corp.* (*In re Chateaugay Corp.*), 86 B.R. 33, 36 (S.D.N.Y. 1987) (*quoting* 130 Cong. Rec. H1850 (daily ed. Mar. 21, 1984) (statement of Rep. Kramer)); *see also Am. Tel. & Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581, 584 (S.D.N.Y. 1988); *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986).  The court in *In re Johns-Manville*, for example, noted that "[p]recisely where the substantial and material line falls is open to dispute," but that "[i]t would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts."  *In re Johns-Manville Corp.*, 63 B.R. at 602; *see also In re Chateaugay Corp.*, 86 B.R. at 36.  Moreover, such a test left a great deal of room for manipulation by various parties to a proceeding; any party could create a situation in which reference withdrawal

would be considered "mandatory" merely by including in a pleading an additional count that on its face required substantial and material consideration of non-bankruptcy law. Such an interpretation permitted opportunities for forum shopping and other abuse of the system.

The standard thus has evolved. In the Southern District of New York, reference withdrawal is mandatory when resolution of a proceeding requires consideration of both title 11 and non-title 11 statutes <u>and</u> conflict exists between the two. *See, e.g.*, *In re Boston Generating, LLC*, Nos. 10 Civ. 6528 (DLC), 10 Civ. 7208 (DLC), 2010 WL 4288171 (S.D.N.Y. Nov. 1, 2010) (reference withdrawal was mandatory in one instance because there was a potential for a substantial and material conflict between Chapter 11 and the Natural Gas Act; reference withdrawal was unnecessary with respect to a second issue because the motion "does not create any jurisdictional conflict that requires either a substantial or material interpretation of federal non-bankruptcy law"); *In re Recoton Corp.*, No. 04 Civ. 2466 (DLC), 2004 WL 1497570 (S.D.N.Y. July 1, 2004) (mandatory withdrawal was not compelled because there was no conflict between bankruptcy and non-bankruptcy law); *Am. Tel. & Tel. Co*, 88 B.R. at 588 ("By enacting § 157(d), Congress determined that a district court of general federal jurisdiction shall be the forum for substantial and material conflicts between the Bankruptcy Code and other federal laws."); *In re Chateaugay Corp.*, 86 B.R. at 38-39 ("In the present case . . . the ERISA issues are concrete, albeit difficult, and are presented in sharp conflict with competing provisions of the Code. Withdrawal of this proceeding is mandatory."); *In re Texaco Inc.*, 84 B.R. 911 (S.D.N.Y. 1988) (though the Natural Gas Policy Act, 15 U.S.C. §§ 3301 *et seq.* and title 11 may be implicated in the assumption of leases, withdrawal

11

motion was denied and, significantly, no conflict was found); *Carter Day Indus., Inc. v. United States Envtl. Prot. Agency (In re Combustion Equip. Assocs., Inc.)*, 67 B.R. 709 (S.D.N.Y. 1986) (mandatory withdrawal was required where resolution of a proceeding required substantial and material consideration of a non-bankruptcy federal statute in tandem with consideration of the Bankruptcy Code).

 The test as currently applied in this court is stated as follows:

> Mandatory withdrawal under § 157(d) is narrowly applied, and is appropriate only when "*substantial and material potential conflicts exist between non-bankruptcy federal laws and Title 11.*" . . . Specifically, this provision of the statute has been interpreted to mandate withdrawal in situations where a bankruptcy judge would be called upon to "engage in significant interpretation, as opposed to simple application," of federal non-bankruptcy statutes.

*In re Best Payphones, Inc.*, 370 B.R. 532, 536 (S.D.N.Y. 2007) (emphasis added; citations omitted); *see also In re Boston Generating, LLC*, 2010 WL 4288171; *In re Recoton Corp.*, 2004 WL 1497570.  The current standard thus generally requires courts to determine whether substantial interpretation of the non-bankruptcy federal law would be required, but only in the context of proceedings involving both bankruptcy and non-bankruptcy federal law.  Such a standard renders section 157(d) impervious to manipulation by parties who attempt to create a situation in which reference withdrawal would be mandatory merely by adding to a pleading a count that would require substantial consideration of non-bankruptcy law.  This standard also more adequately serves the various public policy considerations at play, as district court judges would remain responsible for deciding cases that involve both bankruptcy and non-bankruptcy federal law.  *See* Weil, Gotshal & Manges, *Bankruptcy Jurisdiction*, *in* REORGANIZING FAILING BUSINESSES: A COMPREHENSIVE REVIEW AND ANALYSIS OF FINANCIAL

RESTRUCTURING AND BUSINESS REORGANIZATION, 7-1, at 7-41 to -42 (Revised ed.,

Section of Business Law, American Bar Association 2006).

>    **2.      The Government's Arguments in Support of Mandatory
>              Withdrawal Are Without Merit**
>
>         **a.      Withdrawal of the Reference Is Not Mandatory with
>                   Respect to the Debtor's Request for a Determination of
>                   Its Tax Liability**

While the Debtor's request for a determination as to its tax liability would

undoubtedly require the bankruptcy court to consider federal tax laws, withdrawal of the

reference is not mandatory because the request fails to present the type of conflict

between bankruptcy and non-bankruptcy laws that would be necessary for mandatory

withdrawal to be required.  Consideration of the Debtor's request for declaratory

judgment involves no consideration of bankruptcy laws and thus does not present the

type of potential conflict between the bankruptcy and non-bankruptcy laws that would

make withdrawal of the reference mandatory.  The government has failed to show that

the resolution of the first count of the Debtor's complaint requires consideration of both

Bankruptcy Code provisions and other non-title 11 federal laws and that the Internal

Revenue Code provisions at issue are in conflict with any Bankruptcy Code provisions.

Therefore, Count 1, the Debtor's request for a determination of its tax liability, is not

subject to mandatory withdrawal.

The government specifically lists several separate issues, the resolution of which

it alleges would require interpretation by the court of Internal Revenue Code provisions.

Examination of these issues, however, clearly requires the mere application of the federal

tax law to the Debtor's particular facts.  The government altogether ignores the fact that

consideration of both bankruptcy and non-bankruptcy federal laws must be required

before withdrawal is mandatory.  The bankruptcy court is perfectly capable of handling the issues that would be involved in determining the Debtor's purported tax liability. Only issues of tax law are present; the proceeding would not involve matters of bankruptcy law that conflict with such tax issues.  Situations in which a bankruptcy judge is faced with deciding cases that involve both bankruptcy and non-bankruptcy laws generally are thought to require withdrawal due to the perception that the bankruptcy judge may be biased in favor of the bankruptcy laws if forced to resolve an issue involving both bankruptcy and non-bankruptcy law.  Such concern is not present here, as the determination of the Debtor's federal tax liability involves no consideration of the bankruptcy laws.  Moreover, the fact that the district court or circuit court will review the bankruptcy court's conclusions of law *de novo* further supports the argument that withdrawal of the reference is not mandatory in this instance.

The government cites to a number of cases in support of its position that reference withdrawal is mandatory due to the presence of numerous issues of first impression that implicate non-bankruptcy law.  The government fails to acknowledge, however, the fact that almost all the cited cases in which the Southern District or Second Circuit determined withdrawal to be mandatory involved either a conflict or interaction between bankruptcy and non-bankruptcy federal law that would require significant interpretation, as opposed to simple application, of the non-bankruptcy federal laws.  *See Shugrue v. Pension Benefit Guar. Corp. (In re Ionosphere Clubs, Inc.)*, 142 B.R. 645, 648 (S.D.N.Y. 1992) (wherein the court concluded "without difficulty that PBGC's claim of interaction between Title 11, ERISA and the Internal Revenue Code will require 'significant interpretation, as opposed to simple application,' of those non-bankruptcy federal laws"),

14

*vacated*, 147 B.R. 855 (S.D.N.Y. 1992); *Pension Benefit Guar. Corp. v. Pan Am Corp. (In re Pan Am Corp.)*, 133 B.R. 700 (S.D.N.Y. 1991) (withdrawal of reference was mandatory with respect to corporate debtors' objections to PBGC's claims, as debtors' objections involved interaction between Bankruptcy Code, ERISA, and the Internal Revenue Code); *Am. Tel. & Tel. Co.*, 88 B.R. 581 (conflict between Bankruptcy Code and Comprehensive Environmental Response, Compensation, and Liability Act required withdrawal of reference of potential creditors' CERCLA contribution action from bankruptcy court).

Even case law cited by the government outside of the Southern District of New York holds that, at a minimum, mandatory withdrawal is required only where the claims at issue require the bankruptcy court to engage in substantial and material consideration of both title 11 and non-Bankruptcy Code federal law.  *See U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539 (N.D. Tex. 1992) (noting that a requirement of mandatory withdrawal is that the proceeding involve substantial and material consideration of both Bankruptcy Code and non-bankruptcy federal law).  Of the other cases cited by the government, each case either did not involve situations where the court granted reference withdrawal or was decided by courts other than the Second Circuit Court of Appeals or the District Court for the Southern District of New York.  *See Century Hotels v. United States*, 952 F.2d 107 (5th Cir. 1992); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (court was not deciding motion to withdraw, merely noting that litigation "could well result" in a withdrawal of the bankruptcy reference); *Shugrue v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir. 1990) (no mandatory withdrawal); *Enron Corp. v. J.P. Morgan Secs., Inc. (In re*

15

*Enron Corp.)*, 388 B.R. 131 (S.D.N.Y. 2008) (reference withdrawal not mandatory);

*United States v. G-I Holdings, Inc. (In re G-I Holdings)*, 295 B.R. 222, 224 (D.N.J.

2003); *Keene Corp. v. Williams Bailey & Wesner, LLP (In re Keene Corp.)*, 182 B.R. 379

(S.D.N.Y. 1995) (no mandatory withdrawal); *In re Horizon Air*, 156 B.R. 369 (N.D.N.Y.

1993); *In re Oil Co.*, 140 B.R. 30 (E.D.N.Y. 1992); *Internal Revenue Serv. v. CM*

*Holdings, Inc. (In re CM Holdings, Inc.)*, 221 B.R. 715 (D. Del. 1998).

**b.     Withdrawal of Reference Is Not Mandatory with Respect to the Debtor's Request for a Preliminary Injunction**

In its Complaint, the Debtor seeks a temporary restraining order and preliminary

injunction, pursuant to Bankruptcy Code sections 105(a) and 362(a) and Bankruptcy Rule

7065, ordering the IRS to provide five business days' prior written notice before taking

any Enforcement Actions with respect to the Tax Refunds.  The government attempts to

argue that the relief sought would violate the IRS's sovereign immunity under the

Internal Revenue Code, and the "allegation that the bankruptcy court's equitable powers

can trump the [Internal Revenue Code] is a weighty question that should be decided by

the district court."  Withdrawal Memorandum at 23.  The government altogether ignores

the fact that the issue has been squarely addressed by both Congress and the U.S.

Supreme Court.  Because the issue involves settled law, and its resolution would not

require the bankruptcy court to resolve any conflict between the Bankruptcy Code and

the Internal Revenue Code, reference withdrawal is not mandatory.

The Anti-Injunction Act, which is codified at 26 U.S.C. § 7421(a), provides that

no court may enjoin the IRS from the assessment or collection of taxes.[3]  In 11 U.S.C. §

---

[3]  The U.S. Court of Appeals for the Second Circuit has stated that this Internal Revenue Code section is a codification of the government's sovereign immunity with regard to the assessment

106(a), however, Congress specifically waived the federal government's sovereign immunity in the context of bankruptcy proceedings with respect to certain sections of the Bankruptcy Code, including 11 U.S.C. § 105, which provides the bankruptcy court with general authority to issue any order that is appropriate in connection with administering the Bankruptcy Code and is the provision under which the Debtor seeks to enjoin the IRS; and 11 U.S.C. § 505, which generally provides the bankruptcy court with the authority to determine any tax and is the provision under which the Debtor is requesting a declaration that it has no tax liability.  *See* 11 U.S.C. § 106(a)(1) ("Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [11 U.S.C. §§ 105, 505]."); *see Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 142 (2d Cir. 1999) ("It is undisputed that 11 U.S.C. § 106 abrogates federal sovereign immunity with respect to most aspects of bankruptcy administration . . . .").  11 U.S.C. § 106(a)(2) provides that the bankruptcy court may hear and determine any issue arising with respect to the application of section 105 to governmental units.  11 U.S.C. § 106(a)(3) gives the bankruptcy court the authority to issue against governmental units any order or judgment available under the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), the U.S. Supreme Court held that the states' sovereign immunity is waived in the context of certain bankruptcy proceedings by the ratification of the bankruptcy clause in the

---

and collection of taxes.  *Randell v. United States*, 64 F.3d 101, 106 (2d Cir. 1995) ("In the context of tax assessments and collections the government's sovereign immunity has been codified by the Anti-Injunction Act, I.R.C. § 7421(a) (1988) . . . ."); *see also Murphy v. Internal Revenue Serv.*, 493 F.3d 170, 174 (D.C. Cir. 2007) (same); *Clavizzao v. United States*, 706 F. Supp. 2d 342, 346 (S.D.N.Y. 2009) (same).

Constitution and that the amendment of 11 U.S.C. § 106 has made crystal clear that the sovereign immunity of the federal government is waived under certain Bankruptcy Code sections. *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 361 n.2 (2006). Thus, the U.S. Supreme Court has clearly stated that 11 U.S.C. § 106 abrogates the sovereign immunity of the federal government in bankruptcy cases. The inclusion of sections 105 and 505 in 11 U.S.C. § 106(a)(1) leave no doubt that the sovereign immunity of the federal government is waived in the instant adversary proceeding.

At least one district court has also expressly ruled on the specific issue of whether the Anti-Injunction Act bars the bankruptcy court from issuing an order preventing the IRS from assessing and collecting taxes from a non-debtor subsidiary— the exact issue that the government identifies as giving rise to a conflict between the Bankruptcy Code and the Internal Revenue Code in the present case. In *In re G-I Holdings, Inc.*, 420 B.R. 216 (D.N.J. 2009), the District Court for the Southern District of New Jersey determined that the Anti-Injunction Act did not prohibit the court from issuing an order enjoining the IRS from taking collection action against a non-debtor subsidiary. *In re G-I Holdings*, 420 B.R. at 280.

The government seeks to distinguish the present case from *G-I Holdings* on the ground that here, the IRS has filed no proof of claim, and there is no bankruptcy plan being confirmed in which the government is unimpaired. Neither of these facts undermines the application of *G-I Holdings* to this case. The waiver of sovereign immunity provided for by 11 U.S.C. § 106(a) is absolute. The filing of a proof of claim has the effect under 28 U.S.C. § 157(b)(2)(C) of converting to core proceedings counterclaims against entities that file proofs of claim. Here, the issue is not whether the

18

request for an injunction is core or non-core (although it is core pursuant to *Celotex*, 514

U.S. 300). The issue is whether sovereign immunity is abrogated, and that issue has been

decided by section 106 and *Central Virginia*. The waiver of sovereign immunity under

11 U.S.C. § 106(a) does not require that the governmental unit file a claim. *See In re

DPH Holdings*, 437 B.R. 88, 100-101 (S.D.N.Y. 2010) ("To require that the

governmental units file claims themselves, or have made claims explicitly at issue in the

proceeding, would be to read absent terms into [11 U.S.C. § 106(a)]."). Furthermore,

neither the relevant case law nor the Bankruptcy Code sections at issue provide that the

waiver of governmental immunity is conditioned on a bankruptcy plan being confirmed.

The government's reliance on these facts to distinguish *G-I Holdings* fails to raise any

question as to the applicability of *G-I Holdings* to the Debtor's bankruptcy case.[4]

 The government cites a number of cases in an attempt to demonstrate that the

Anti-Injunction Act prohibits the bankruptcy court from enjoining the IRS's collection of

taxes from non-debtors. All but two of the cases cited by the government, however, pre-

date *Central Virginia* and the amendment of 11 U.S.C. § 106 in 1994 to explicitly

establish that sovereign immunity is abrogated as to a governmental unit with respect to

11 U.S.C. §§ 105, 362, and 505. *See Laughlin v. Internal Revenue Serv.*, 912 F.2d 197

(8th Cir. 1990); *Am. Bicycle Ass'n v. United States (In re Am. Bicycle Ass'n)*, 895 F.2d

---

[4] The government also quotes the court's observation that a "tension" exists between the
Bankruptcy Code and the Internal Revenue Code and contends that *G-I Holdings* identifies a
conflict between the two. The government fails to recognize that the court, in the same
paragraph, notes that the Supreme Court's opinion in *Central Virginia Community College*
provides the bankruptcy court the authority to issue an order against the IRS with respect to the
collection of taxes from a non-debtor subsidiary because sovereign immunity in the bankruptcy
context has been abrogated. *See In re G-I Holdings*, 420 B.R. at 280. Thus, to the extent the
court in *G-I Holdings* identified any tension between the Bankruptcy Code and the Internal
Revenue Code, the court explicitly determined that the U.S. Supreme Court had resolved any
issue on the precise matter the government claims gives rise to conflict.

1277 (9th Cir. 1990); *In re Hall*, 123 B.R. 441 (Bankr. N.D. Ga. 1990); *Upton Printing Co. v. United States*, 116 B.R. 66 (E.D. La. 1989); *In re Pressimore*, 39 B.R. 240 (N.D.N.Y. 1984).  The two cases decided after the 1994 amendment involved facts completely unlike those in the present proceeding.[5]

Congress and the Supreme Court have made clear that the government's sovereign immunity has been waived in the context of this bankruptcy case.  The bankruptcy court clearly has authority to issue a temporary restraining order and preliminary injunction ordering the IRS to provide notice before taking Enforcement Action.  Because no conflict exists between the Bankruptcy Code and the Internal Revenue Code with respect to this authority, the government's argument for mandatory reference withdrawal on this point is without merit.

**B.     There Is No Basis for Discretionary Withdrawal of the Reference**

The government asserts in the alternative that the reference should be withdrawn pursuant to the discretionary provision of 28 U.S.C. § 157(d), which allows withdrawal "for cause shown."  To determine whether "cause" exists, courts must consider whether the action is core or non-core and must consider issues including judicial economy, prevention of forum shopping, economical use of debtor's and creditor's resources, uniformity in the administration of bankruptcy law, and the presence of a jury demand. *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095,

---

[5]  The first post-1994 case cited by the government, *In re Bankr. Court's Use of a Standardized Form of Chapter 13 Confirmation Order that Enjoins Internal Revenue Serv. to Redirect Tax Refunds to Chapter 13 Trustees*, 423 B.R. 294, 302 (E.D. Mich. 2010), was unlike our case in that no explicit statutory provision waiving the IRS's sovereign immunity with respect to the proceeding was identified.  *United States v. Plainwell, Inc.*, No. 00-4350 (JWV), 2004 WL 2345717 (D. Del. Oct. 7, 2004), the second post-1994 case cited by the government, likewise concerned facts inapplicable to the present case and based its analysis of sovereign immunity in the bankruptcy context, in part, on common law.

1101 (2d Cir. 1993). The first factor—whether the claim or proceeding is core or non-core—is the most important, and it is upon this issue that questions of efficiency and uniformity will turn. *See South St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996); *In re Orion Pictures Corp.*, 4 F.3d at 1101. None of these factors favors the United States.

As discussed above, this matter clearly is a core proceeding.[6] Withdrawal would also be inefficient from the standpoint of judicial resources and uniformity in bankruptcy administration. The bankruptcy judge assigned to this case is eminently competent to adjudicate these issues. Time is of the essence here because the Debtor needs a resolution of the issues involved in the adversary proceeding to proceed to confirmation. The bankruptcy court would be able to handle the matter much more quickly and efficiently than would the district court, which has criminal matters governed by speedy trial rules and other exigent matters. Contrary to the government's argument that the bankruptcy judge would only be permitted to submit proposed findings of fact and

---

[6] Whether a matter is a "core" bankruptcy issue is determined by the bankruptcy judge. 28 U.S.C. § 157(b)(2). Accordingly, a majority of courts have ruled that a withdrawal of reference motion may not be presented to a district court until the bankruptcy judge determines whether the proceeding is core. *See, e.g.*, *California v. Enron Corp. (In re Enron Corp.)*, 05 Civ. 4079 (BGD), 2005 U.S. Dist. LEXIS 9548 (S.D.N.Y. May 17, 2005); *Ranch 1 Metro, Inc. v. State Nat'l Ins. Co. (In re Ranch 1, Inc.)*, No. 02 Cir. 4417 (WK), 2002 WL 31175184, at *1-2 (S.D.N.Y. Sept. 27, 2002). Such determination generally is left to the bankruptcy judge because the bankruptcy court is in a better position to decide whether an issue is core, given its special expertise in these matters and its familiarity with the specific case at issue. Courts in this jurisdiction have consistently denied motions to withdraw the reference where the bankruptcy court has not yet determined whether the proceeding is core or non-core. *See Zond Minn. Const. Co., LLC v. Marathon Elec. Mfg. Corp. (In re Enron Corp.)*, 04 Civ. 7950 (NRB), 2005 U.S. Dist. LEXIS 2132 (S.D.N.Y. Feb. 14, 2005) (declining to determine core/non-core status because bankruptcy court is better situated to make the determination); *Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.)*, 04 Civ. 509 (MBM), 2004 U.S. Dist. LEXIS 19131 (S.D.N.Y. Sept. 22, 2004) (declining to preempt the core/non-core determination by the bankruptcy court); *United Illuminating v. Enron Power Mktg., Inc. (In re Enron Corp.)*, No. 03 Civ. 5078 (DLC), 2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003) (denying a motion for discretionary withdrawal because (i) withdrawal was premature given that the judge had yet to rule on whether the proceeding was core or non-core, and (ii) judicial efficiency favored denial).

conclusions of law that would be subject to *de novo* review by the district court, the core nature of the adversary proceeding means that the bankruptcy judge is able to issue final orders and judgments.  Moreover, to the extent fact discovery is required, such discovery could be more quickly handled in the bankruptcy court.

In sum, the motion for withdrawal of the reference should be denied because the requirements of 28 U.S.C. § 157(d) have not been met.  As aforesaid, however, if the district court determines to withdraw the reference, we respectfully suggest that it be withdrawn subject to the bankruptcy court rendering the matter trial ready and proposing findings of fact and conclusions of law to the district court subject to *de novo* review.  *See Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147 (S.D.N.Y. 2004); *In re Kenai Corp.*, 136 B.R. 59 (S.D.N.Y. 1992).

## CONCLUSION

The Debtor respectfully requests that the Court deny the United States' Motion for Withdrawal of the Reference.


Dated: New York, NY                                    DEWEY & LEBOEUF LLP
          February 1, 2011


                                                       /s/ Martin J. Bienenstock
                                                       Peter A. Ivanick, Esq.
                                                       Martin J. Bienenstock, Esq.
                                                       Lawrence M. Hill, Esq.
                                                       1301 Avenue of the Americas
                                                       New York, New York 10019
                                                       Telephone:  212.259.8000
                                                       Facsimile:  212.259.6333

                                                       *Attorneys for the Debtor and*
                                                       *Debtor in Possession*