PREET BHARARA
United States Attorney for the
Southern District of New York
By:  DANIEL P. FILOR
     ELLEN LONDON
Assistant United States Attorneys
86 Chambers Street -- 3rd Floor
New York, New York 10007
Telephone: (212) 637-2726/2737
Facsimile: (212) 637-2717
Email:  Daniel.Filor@usdoj.gov
        Ellen.London@usdoj.gov

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re:

AMBAC FINANCIAL GROUP, INC.,

                  Debtor,

AMBAC FINANCIAL GROUP, INC.,

                  Plaintiff,

v.

UNITED STATES OF AMERICA,

                  Defendant.

------------------------------------------------------------------x

11 Civ. 270 (PGG) (JLC)

ECF Case

Bankr. Case No. 10-15973 (SCC)

Adv. Pro. No.:  10-4210


**REPLY MEMORANDUM IN FURTHER SUPPORT OF UNITED STATES'
MOTION TO WITHDRAW THE REFERENCE**

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT……………………………………………………………….1

ARGUMENT…………………………………………………………………………………...2

    I.     MANDATORY WITHDRAWAL IS REQUIRED BASED ON
THE NEED FOR SUBSTANTIAL AND MATERIAL
CONSIDERATION OF FEDERAL TAX LAW………………………….........2

          A.     Ambac Is Wrong About the Standard for Mandatory Withdrawal,
Which Is Satisfied Here………………...……………………………2

          B.     The Novel Federal Tax Issues in this Case Mandate Withdrawal………..4

          C.     The Conflict Between the Injunctive Relief Requested Under the
Bankruptcy Code and the IRS's Powers Under the IRC Requires
Mandatory Withdrawal…………………………………………………7

    II.    PERMISSIVE WITHDRAWAL IS ALSO APPROPRIATE…………………….9

    II.    THIS COURT SHOULD NOT TEMPORARILY REMAND
THIS CASE TO THE BANKRUPTCY COURT FOR DISCOVERY
OR OTHER PURPOSES…..…………………………………………………….10

CONCLUSION…………………………...……………………………………………...13

**TABLE OF AUTHORITIES**

**CASES**

*In re Adelphia Commc'ns Corp. Secs. and Derivs. Litig.*,
   No.03 MDL 1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)......................3

*In re Bankruptcy Court's Use of Stand. Form of Chap. 13 Trustees*,
   423 B.R. 294 (E.D. Mich. 2010)..................................................................................8

*In re Best Payphones, Inc.*,
   370 B.R. 532 (S.D.N.Y. 2007).....................................................................................4

*In re Boston Generating, LLC*,
   No. 10 Civ. 6528 (DLC), 2010 WL 4288171 (S.D.N.Y. Nov. 1, 2010).......................9

*Chemtura Corp. v. United States*,
   No. 10 Civ. 503 (RMB), 2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010)...................3, 5

*City of New York v. Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991)..................................................................................3, 9

*Combustion Equipment Associates, Inc. v. U.S. E.P.A.*,
   67 B.R. 709 (S.D.N.Y. 1986).......................................................................................2

*In re Dana Corp.*,
   379 B.R. 449 (S.D.N.Y. Nov. 20, 2007)......................................................................3

*Enron Corp. v. California Power Exchange Corp.*,
   No. 04 Civ. 8177 (RCC), 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004)....................3

*Federal Home Loan Mortgage Corp. v. Commissioner*,
   125 T.C. 248 (T.C. 2005).............................................................................................7

*In re G-1 Holdings, Inc.*,
   420 B.R. 216 (D.N.J. 2009) .........................................................................................8

*IRS v. CM Holdings, Inc. (In re CM Holdings, Inc.)*,
   221 B.R. 715 (D. Del. 1998).........................................................................................6

*Ionosphere Clubs, Inc. v. Air Line Pilots Associate*,
   922 F.2d 984 (2d Cir. 1990).........................................................................................3

*Keene Corp. v. Williams Bailey & Wesner, L.L.P.*,
   182 B.R. 379 (S.D.N.Y. 1995).................................................................................4, 5

*In re Kenai Corp.*,
    136 B.R. 59 (S.D.N.Y. 1992) ................................................................................. 8

*In re Kuppin*,
    335 B.R. 675 (S.D. Ohio 2005) ............................................................................. 8

*In re Manhattan Invest. Fund Ltd.*,
    343 B.R. 63 (S.D.N.Y. 2006) ................................................................................. 5

*Mishkin v. Ageloff*,
    220 B.R. 784 (S.D.N.Y. 1998) .......................................................................... 9, 13

*Nukote Inter. v. Office Depot, Inc.*,
    No. 3:09-0921, 2009 WL 3840482 (M.D. Tenn. Nov. 16, 2009) ....................... 12

*Orion Pictures Corp. v. Showtime Networks, Inc.*,
    4 F.3d 1095 (2d Cir. 1993) .................................................................................. 12

*Pereira v. New York Hotel & Motel Trades Council (In re Chadbourne
    Industries, Ltd.)*, 100 B.R. 663 (S.D.N.Y. 1989) ................................................ 5

*Schneider v. Riddick*,
    305 B.R. 147 (S.D.N.Y. 2004) ............................................................................ 10

*In re Scott Cable Commc'ns, Inc.*,
    227 B.R. 596 (D. Conn. 1998) .............................................................................. 8

*Singer Co v. Groz-Beckert KG*,
    No. 01 Civ. 0165 (WHP), 2002 WL 243779 (S.D.N.Y. Feb. 20, 2002) ............... 3

*In re S.N.A. Nut Co.*,
    No. 96 C 181, 1996 WL 411290 (N.D. Ill. July 19, 1996) ................................... 8

*In re U.S. Lines*,
    197 F.3d 631 (2d Cir. 1999) .................................................................................. 8

*United States v. Plainwell, Inc.*,
    No. 00-4350, 2004 WL 2345717 (D. Del. Oct. 7, 2004) ...................................... 8

**STATUTES AND RULES**

26 U.S.C. § 446....................1

28 U.S.C. §§ 157(c)(1) & (c)(2)....................11

28 U.S.C. § 157(d)....................1, 2, 11

28 U.S.C. § 158....................11

28 U.S.C. § 636....................11

Federal Rule of Civil Procedure 72....................11

Federal Rule of Civil Procedure 73....................11

**PRELIMINARY STATEMENT**

Defendant the United States of America (the "Government"), by and through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum in further support of its motion for withdrawal of the reference to of this adversary proceeding.

As described in the Government's initial brief ("Mov. Br."),[1] withdrawal of the reference of this adversary proceeding under 28 U.S.C. § 157(d) is mandatory because substantial and material consideration of non-bankruptcy federal law is necessary for the resolution of the proceeding.  Specifically, to resolve this case in Ambac's favor, several significant interpretations of federal tax law, including a number of issues of first impression, will be required, including: (1) whether the method of accounting used by Ambac for its CDSs "clearly reflects income" under IRC § 446; (2) whether the CDSs are notional principal contracts under Treasury Regulation § 1.446-3; (3) whether Ambac can rely on proposed Treasury Regulation § 1.446-3(g), and if so, whether Ambac's method of accounting comports with the proposed regulation; and (4) whether Ambac was allowed to change its method of accounting on the CDSs under IRS § 446 and Treasury Regulation § 1.446-1.  In addition, resolution of Ambac's claim for injunctive relief and Ambac's PI Motion will involve settling a conflict between the Bankruptcy Code and the IRS's rights to collect taxes under the IRC, which resolution also belongs in the district court.

In opposing this withdrawal motion, Ambac and Intervenor the Official Committee of Unsecured Creditors (the "Committee") principally argue that each of these issues can be resolved through a straightforward application of settled, governing non-bankruptcy law.  Yet in

---

[1] This reply memorandum uses the same abbreviations that the Government defined in its Moving Brief.

a combined 42 pages of briefing, neither Ambac nor the Committee has been able to identify this purported controlling authority. They cannot point to a single Supreme Court or Second Circuit decision addressing any of the legal issues identified in the Government's Moving Brief. Nor have they even managed to identify analogous case law that would govern the dispute. In the absence of controlling authority to address these questions, some of which the Committee itself recognizes are "matters of first impression," it can hardly be said this case involves the mere application of settled legal principles to the facts of this case.

As described below and in the Government's Moving Brief, these significant and material questions of non-Bankruptcy federal tax law require mandatory withdrawal of the reference. Additionally, even if mandatory withdrawal did not apply, this adversary proceeding should be withdrawn based on permissive withdrawal.

## ARGUMENT

### I. MANDATORY WITHDRAWAL IS REQUIRED BASED ON THE NEED FOR SUBSTANTIAL AND MATERIAL CONSIDERATION OF FEDERAL TAX LAW

#### A. Ambac Is Wrong About the Standard for Mandatory Withdrawal, Which Is Satisfied Here

Ambac argues in its opposition brief ("Ambac Br.") that the standard for mandatory withdrawal under 28 U.S.C. § 157(d) has "evolved" and only cases involving a conflict between bankruptcy and non-bankruptcy federal law are subject to mandatory withdrawal. See Ambac Br. at 10-14. This is flatly wrong.

"[T]he legislative history of section 157(d) and the case law interpreting it reveal that withdrawal is mandatory only when 'substantial and material consideration' of federal statutes other than the Bankruptcy Code" is necessary for resolution of the case. Combustion Equipment Assocs., Inc. v. U.S. E.P.A., 67 B.R. 709, 711 (S.D.N.Y. 1986) (citations omitted); see also id. at

712 ("'recall is mandatory' where claim does not arise under Title 11 or where federal laws regulating organizations or activities affecting interstate commerce are involved") (quoting S.Rep. No. 55, 98th Cong., 1st Sess. 16 (1983)).  Because Congress wanted federal district courts to decide significant non-bankruptcy federal law, the Second Circuit requires mandatory withdrawal "of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); see also Ionosphere Clubs, Inc. v. Air Line Pilots Assoc., 922 F.2d 984, 995 (2d Cir. 1990) (withdrawal is mandatory "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding").  Ambac's contention that a significant interpretation of non-bankruptcy federal law is insufficient for mandatory withdrawal is misleading.[2]  As neither Congress nor the Second Circuit has changed this standard in the past twenty-five years, the courts in this district continue to apply, as they must, the Second Circuit's test of whether "substantial and material consideration" of non-bankruptcy federal law is required.  See Chemtura Corp. v. United States, No. 10 Civ. 503 (RMB), 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010); In re Dana Corp., 379 B.R. 449, 455 (S.D.N.Y. Nov. 20, 2007); In re Adelphia Commc'ns Corp. Secs. and Derivs. Litig., No.03 MDL 1529 (LMM), 2006 WL 337667, at *3 (S.D.N.Y. Feb. 10, 2006); Enron Corp. v. Cal. Power Exchange Corp., No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004); Singer Co v. Groz-Beckert KG, No. 01 Civ. 0165 (WHP), 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002); Bear, Sterns Secs. Corp. v. Gredd, No. 01 Civ 4379 NRB, 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001).

---

[2]  To the extent Ambac argues that the adversary proceeding does not raise issues of bankruptcy law, such an assertion is belied by the bases for its claims in sections 105 and 505 of the Bankruptcy Code.  See Ambac Br. at 4-7.

Without citation, Ambac asserts that mandatory withdrawal exists as a result of conflicts between bankruptcy and other federal laws and the "perception that the bankruptcy judge may be biased in favor of the bankruptcy laws." Ambac Br. at 14. While Ambac has identified cases where a conflict between bankruptcy and non-bankruptcy federal law was found sufficient to require withdrawal of the reference, see id. at 12 (quoting In re Best Payphones, Inc., 370 B.R. 532, 536 (S.D.N.Y. 2007)), those cases do not stand for the proposition that such a conflict is necessary for withdrawal of the reference, nor that a "substantial and material consideration" of non-bankruptcy federal law is insufficient. In fact, although Ambac notably omitted the citation from its brief, the language that Ambac quotes from Best Payphones relies on Keene Corp. v. Williams Bailey & Wesner, LLP, 182 B.R. 379, 381-82 (S.D.N.Y. 1995), which explicitly rejected the notion that "a conflict between the provisions of Title 11 and non-bankruptcy federal law" is a prerequisite for mandatory withdrawal. Keene explained that "[m]andatory withdrawal is appropriate when 'substantial and material' potential conflicts exist between non-bankruptcy federal laws and Title 11," but "[w]ithdrawal is also warranted when resolution of the matter would require the bankruptcy judge to 'engage in significant interpretation, as opposed to simple application,' of federal non-bankruptcy statutes." Id. (citations omitted).

### B. The Novel Federal Tax Issues in this Case Mandate Withdrawal

In the present matter, there are several different novel and complex federal tax issues that Ambac seeks to have decided, each of which warrants mandatory withdrawal. The Committee acknowledges in its opposition brief ("Comm. Br.") that, as to the question of whether CDS contracts are NPCs, "[e]veryone would agree that the question is unresolved from a tax standpoint, and even one of first impression." Comm. Br. at 10. This is significant, because "'[w]here matters of first impression are concerned, the burden of establishing a right to

4

mandatory withdrawal is more easily met.'"  Chemtura, 2010 WL 1379752, at *1 (citation omitted); see also Keene, 182 B.R. at 382 ("The courts in this district have recognized that the mandatory withdrawal standard is more easily satisfied when complicated issues of first impression are implicated under non-bankruptcy federal laws.").

The Committee contradictorily asserts, however, that the tax questions at issue here nonetheless involve the mere application of the facts to established rules.  It is true that mandatory withdrawal is not warranted for the "straightforward application" of an established legal standard to the facts.  Yet the Committee's failure to identify any such governing legal standard dooms this argument.  Indeed, in order to make this argument at all, the Committee must ignore several of the fundamental issues raised by the Government in its Moving Brief.[3]

The Committee attempts to collapse three different legal questions in this adversary proceeding into a single issue – whether the Post-2004 CDS Contracts are NPCs.  Comm. Br. at 7.  Yet the questions of whether the impairment method used by Ambac clearly reflected income, see Mov. Br. at 13-15, or whether this method is a "reasonable amortization method," id. at 18-21, must also be separately resolved by the Court adjudicating this action.  These questions cannot be answered simply by determining whether the CDS contracts are NPCs.  And both Ambac and the Committee completely fail to address the novel issue of whether the impairment method Ambac allegedly used clearly reflected its income.

---

[3] By contrast, in Pereira v. New York Hotel & Motel Trades Council (In re Chadbourne Industries, Ltd.), 100 B.R. 663 (S.D.N.Y. 1989), which the Committee cites, there was an existing Supreme Court case that set out the test to be applied to the action that was the subject of the withdrawal motion – whether a trustee was a "successor employer."  Moreover, in Pereira, because the bankruptcy court had itself put in place the trustee at issue, it was uniquely positioned to determine the question as to the "scope and limits of the authority with which it endowed [this] trustee."  Id. at 668-69.

Rather, the meaning of the federal tax provisions defining NPCs, the regulation requiring a "reasonable amortization method," and the question as to whether the impairment method "clearly reflects income," all have "yet to be litigated in any federal court."  See IRS v. CM Holdings, Inc., 221 B.R. 715, 723 (D. Del. 1998) (holding that federal tax issue "yet to be litigated in any federal court" required withdrawal).  Moreover, even assuming that the CDS contracts were NPCs, this would not resolve this litigation.  The IRS has not yet provided final guidance as to the proper method of amortizing contingent nonperiodic payments under NPC's, and the question of whether methods such as the impairment method are reasonable is unresolved.  Moreover, if the CDS contracts are not NPCs, there is an equally unsettled and substantial question of whether the impairment method Ambac used clearly reflected income.[4]

The Committee asserts that the issue of whether the Post-2004 CDS Contracts are "options" is one that can be answered by simple application of a straightforward definition.  Comm. Br. at 9.  However, the cases cited reveal that determining whether a contract is an option for tax purposes often involves complicated assessment of not just the contractual language but also of the economic substance and the tax policies at issue.  See, e.g., Fed. Home Loan Mortgage Corp. v. Comm'r, 125 T.C. 248, 261-69 (T.C. 2005) (reviewing the formal option requirements, the economic substance, and rationale for option treatment); see also Kevin J. Liss, The Option Conundrum in Tax Law:  After All These Years, What Exactly is an Option?, 63 Tax

---

[4] The Committee suggests that any method of amortization pursuant to Treasury Regulation § 1.446-3(f)(2)(i), which requires that payments be recognized "in a manner that reflects the economic substance of the contract," "presumptively" meets the requirements of clearly reflecting income.  Comm. Br. at 7, 13.  However, the Committee offers no support for this proposition, which is at odds with Ambac's contention that the impairment method is a "reasonable amortization method" pursuant to the Preamble of Proposed Treasury Regulation § 1.446-3.  Compl. ¶ 69.

Case 1:11-cv-00270-PGG   Document 7   Filed 02/08/11   Page 12 of 18

Law. 307, 309-10 (2010) (discussing various unsettled questions regarding defining options for tax purposes).[5]

The Committee also argues that the issue of whether Ambac properly changed its method of accounting involves a mere application of established law and "directly applicable administrative guidance." Comm. Br. at 14. However, it does not explain what specific law or guidance there is as to whether Ambac's adoption of different methods of accounting for gains and losses for its CDS contracts was proper. This is a novel question, and one that requires a substantial interpretation of the relevant authority which mandates withdrawal.

### C. The Conflict Between the Injunctive Relief Requested Under the Bankruptcy Code and the IRS's Powers Under the IRC Requires Mandatory Withdrawal

As described in the Government's Moving Brief (at 23-28), the injunctive relief sought in the adversary proceeding's second count and the preliminary injunction requested in Ambac's PI Motion also mandate withdrawal because they present a fundamental conflict between the Bankruptcy Code and the IRC. Ambac contends that, since the 1994 amendment to Bankruptcy Code § 106(a), the Government's sovereign immunity has been waived for the type of injunctive relief Ambac seeks. While Ambac unconvincingly asserts that "the issue involves settled law," Ambac Br. at 16, it can cite only one case that enjoined the IRS's actions against non-debtors

---

[5] The Committee further states that the Government was "selective" in its citation to scholarship on this issue, but then fails to cite articles to the contrary that the Government should have included. Comm. Br. at 10. Nevertheless, to the extent there is divergence in the scholarship, it reflects the challenging nature of the question that should be handled by the district court. In addition, the Committee argues that the publications cited are irrelevant because they address generic CDS contracts as opposed to pay-as-you-go contracts such as the Post-2004 CDS Contracts. Id. However, as one of the authors notes, "[m]ost of the problems and arguments discussed . . . for ordinary credit default swaps are also applicable in the case of 'pay-as-you-go credit default swaps." Bruce E. Kayle, The Federal Income Tax Treatment of Credit Derivative Transactions, 897 PLI/Tax 1071, 1135 (2009).

and must concede that, even since 1994, there has been a split in authority on this issue in the district courts. See id. at 18-20, n.5 (compare In re G-1 Holdings, Inc., 420 B.R. 216 (D.N.J. 2009) (allowing limited injunction against IRS, which had filed proof of claim and was unimpaired under reorganization plan), with In re Bankr. Court's Use of Stand. Form of Chap. 13 Trustees, 423 B.R. 294, 300-02 (E.D. Mich. 2010) (holding Anti-Injunction Act bars bankruptcy court from directing IRS to submit debtor's future tax refunds to Trustees) and United States v. Plainwell, Inc., No. 00-4350, 2004 WL 2345717, at *2 (D. Del. Oct. 7, 2004) (holding sovereign immunity precluded bankruptcy court order enjoining IRS from collecting taxes from debtor's officers and directors).[6]  Where district courts are in disagreement on fundamental questions of the Government's sovereign immunity and conflicts between the Bankruptcy Code and the IRS's powers under the IRC, the case should be decided by the district court.

The Committee's only argument against withdrawal on this issue is that the injunctive relief sought by Ambac creates a "minimal delay in the exercise" of the IRS's powers. Comm. Br. at 15. As explained in the Government's Moving Brief, however, the requirement of a five-day notice period before the IRS may use any of its exigent powers provided by the IRC would vitiate those tools. Moreover, there is no such thing as a "minimal" abrogation of the Government's sovereign immunity. Consideration of such a weighty issue mandates withdrawal.

---

[6] See also In re Kuppin, 335 B.R. 675, 679-80 (S.D. Ohio 2005) (reversing bankruptcy court injunction requiring IRS to pay refund to debtor which would then be paid to debtor's wife pursuant to reorganization plan, and holding that Bankruptcy Code § 105 does not override Anti-Injunction Act); In re Scott Cable Comm's, Inc., 227 B.R. 596, 602 (D. Conn. 1998) (rejecting confirmation plan's provision that enjoins IRS from asserting claims against non-debtor officers and directors because specific and unequivocal intent of Anti-Injunction Act is not overridden by general authority of § 105(a)).

## II.   PERMISSIVE WITHDRAWAL IS ALSO APPROPRIATE

Ambac argues that this is a core proceeding; however, at a minimum, Ambac's claim seeking injunctive relief enjoining the IRS from collecting against non-debtor affiliates without notice cannot be core because such property does not belong to the bankruptcy estate. In re U.S. Lines, 197 F.3d 631, 637 (2d Cir. 1999) (administering property in bankrupt's possession is core). In any event, as an initial matter, the core versus non-core distinction is irrelevant to whether mandatory withdrawal is required. E.g., Exxon, 932 F.2d at 1026; In re Boston Generating, LLC, No. 10 Civ. 6528 (DLC), 2010 WL 4288171, at *5 (S.D.N.Y. Nov. 1, 2010). Accordingly, even if the adversary proceeding were determined to be core, it does not affect whether the case is subject to mandatory withdrawal. In addition, even if the claim were found to be core by this Court or the bankruptcy court, it is not dispositive of permissive withdrawal. E.g., Mishkin v. Ageloff, 220 B.R. 784, 800 (S.D.N.Y. 1998) (assuming issue was core but granting permissive withdraw because "critical question is efficiency and uniformity").

Contrary to Ambac's contention, Ambac Br. at 21, the "competence" of the bankruptcy judge assigned to the case is irrelevant to permissive withdrawal. Further, Ambac's and the Committee's arguments that permissive withdrawal is warranted because this Court also handles criminal matters, id. at 21, or because the services of a magistrate judge "would be a waste of judicial resources" and "lead to additional delay and expense," Comm. Br. at 17, are unsupported by case law and smack of forum shopping. And their bald assertion that the action must proceed on a "fast track" is a typical maneuver in bankruptcy, all the more dubious in this case where Ambac recently received over $700 million in tentative refunds from the IRS that have not been repaid and where no plan of confirmation has even been proposed. Ambac Br. at 3. Nevertheless, the pace of litigation does not detract from permissive withdrawal, especially when

9

the Court can enlist the services of a magistrate judge to handle discovery disputes and mediation. Assuming, arguendo, mandatory withdrawal did not apply, the novelty of the federal tax law issues certainly heavily favors permissive withdrawal.

### III. THIS COURT SHOULD NOT TEMPORARILY REMAND THIS CASE TO THE BANKRUPTCY COURT FOR DISCOVERY OR OTHER PURPOSES

Ambac argues that even if the Court withdraws the reference, it should temporarily leave the case with the bankruptcy court to oversee discovery and issue findings of fact and conclusions of law subject to de novo review. See Ambac Br. at 22. The two cases Ambac cites, however, do not support this proposition. In both Schneider v. Riddick, 305 B.R. 147 (S.D.N.Y. 2004), and In re Kenai Corp., 136 B.R. 59 (S.D.N.Y. 1992), the courts denied the motions to withdraw the reference. While those courts did discuss the possibility of leaving the actions with the bankruptcy court to oversee discovery if they had granted the withdrawal motions (which they did not do), the courts were evaluating discretionary (or permissive) withdrawal.

There is nothing in the Bankruptcy Code, section 157, or the Rules of Bankruptcy Procedure, that authorizes a district court to remand a mandatorily withdrawn action to the bankruptcy court to manage discovery or issue findings. Unlike permissive withdrawal, where mandatory withdrawal is required, like here, the statute prescribes that "[t]he district court shall, on a timely motion of a party, so withdraw a proceeding." 28 U.S.C. § 157(d). It is undisputed that the Government's motion was timely, and therefore, if the Court finds that mandatory withdrawal is required, it should take jurisdiction of the adversary proceeding immediately.

Because there is no statutory authorization for a referral of a withdrawn matter back to the bankruptcy court, there are likewise no procedures governing review of a bankruptcy court's rulings in such a situation. Ambac and the Committee are therefore forced to cobble together a

procedural framework from other, inapplicable statutory provisions. They suggest, for example, that this Court could adopt the standard of review set forth under 28 U.S.C. 157(d), which provides for de novo review of a bankruptcy court's findings in a non-core case for which the reference has not been withdrawn. Yet even if this inapposite standard of review were imported into these proceedings, it would hardly answer the many other procedural questions that are raised by Ambac's proposal. For example, Ambac nowhere addresses what the standard of review would be for the bankruptcy court's discovery rulings or other orders, nor the mechanism for obtaining review by the district court of such decisions. When a matter is referred to the magistrate under the statutory authority of 28 U.S.C. § 636, for example, Rules 72 and 73 of the Federal Rules of Civil Procedure provide the mechanism and the standard for review. No such mechanisms exist in the bankruptcy context, however. Indeed, the only method that exists for obtaining district court review of a bankruptcy court's orders is through the appeals procedures of 28 U.S.C. § 158, pursuant to which interlocutory orders are appealable only with leave of the district court. See, e.g., In re S.N.A. Nut Co., No. 96 C 181, 1996 WL 411290, at *3 (N.D. Ill. 1996). It cannot be either that such discovery orders are unreviewable by the district court, or that in order to obtain review of the bankruptcy court's discovery rulings in a matter for which the reference is withdrawn (and over which the bankruptcy court no longer has jurisdiction), the Government would be required to file separate appeals and adhere to the process set forth in Part VIII of the Federal Rules of Bankruptcy Procedure. Accordingly, Ambac's proposal would introduce an entirely unwarranted additional layer of complexity and inefficiency.

In the permissive withdrawal context of non-core matters, the Second Circuit has explained that an additional layer of review by the bankruptcy court followed by de novo review by the district court can introduce "unnecessary costs [that] could be avoided by a single

11

proceeding in the district court." Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1101 (2d Cir. 1993).  Indeed, in Orion, the court found the inefficiency of such duplicative proceedings could support permissive withdrawal.  Ambac wants to turn this efficiency consideration on its head.  Even though withdrawal is mandatory here, Ambac suggests the inefficiency of having an entirely separate bankruptcy proceeding – subject, as they claim, to de novo review – is warranted because the pace of litigation requires it.  Ambac fails to explain why it would be faster to insert an entirely duplicative proceeding – where the bankruptcy court issues findings of fact and conclusions of law – then to have all proceedings completed before this Court in the first instance.  See Adelphia, 2006 WL 337667, at *5 ("Withdrawal will eliminate that duplication of effort" of bankruptcy court recommended findings subject to de novo review by district court).  Again, the illogic of this argument, particularly where, as here, the bankruptcy court has no expertise in the tax matters at issue and no familiarity with the factual matters that underlie this tax dispute, strongly suggests that this request is motivated by an attempt at forum shopping.  The inefficiencies the Second Circuit identified in the permissive context would surely be present for mandatory withdrawal.

     Moreover, even in the context of granting permissive withdrawal, district courts have used their discretion and held that the withdrawn action should not be left in the bankruptcy court for pretrial discovery.  For example, in Nukote Inter. v. Office Depot, Inc., No. 3:09-0921, 2009 WL 3840482, at *6 n.6 (M.D. Tenn. Nov. 16, 2009), the court granted permissive withdrawal and, in rejecting the argument that the court could leave the case with the bankruptcy court for pretrial administration, explained, "there is little connection between bankruptcy law and this case, and, therefore, it strikes the court as entirely proper, and likely more efficient, for a district court of general jurisdiction to handle the case from its initial stages onward."

Similarly, as Ambac admits, the issues raised in its adversary proceeding relate to questions of non-bankruptcy federal tax law, see Ambac Br. at 13-14, and should be handled in the district court from the initial stages onward. Because the Government made its motion to withdraw the reference at the inception of the litigation, the bankruptcy court has not overseen any discovery relating to the tax issues or otherwise developed any expertise relating to the novel, non-bankruptcy, federal tax questions. This Court withdrawing the reference immediately would be most efficient in placing all discovery disputes squarely before the district court, thereby "prevent[ing] the type of unnecessary delay, expense and duplication of effort that withdrawal was intended to avoid," and avoiding "another level of briefing and expense" on dispositive motions. Mishkin, 220 B.R. at 801 n.13.

## CONCLUSION

For these reasons, and those raised in the Government's Moving Brief, the Court should grant the Government's motion to withdraw the reference, and assume jurisdiction over this adversary proceeding.

Dated:  New York, New York
         February 8, 2011

                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York

By:     s/ Daniel P. Filor
       DANIEL P. FILOR
       ELLEN M. LONDON
       Assistant United States Attorneys
       86 Chambers Street -- 3rd Floor
       New York, New York 10007
       Telephone: (212) 637-2726
       Facsimile:  (212) 637-2717
       *Attorneys for the United States of America*